UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA LYNN CROUCH, | ) Case No. CV 12-0624 (OP) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 11, 12.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 8 at 3.)

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the administrative law judge ("ALJ") properly considered the relevant medical evidence of record; and

(2) Whether the ALJ properly assessed Plaintiff's credibility.

(JS at 3-4.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.
# **DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of diabetes mellitus

and hypertension. (Administrative Record ("AR") at 17.) The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to lift/carry and push/pull fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and should avoid work at heights. (Id. at 19.)

Relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff is capable of performing her past relevant work as a general office clerk (Dictionary of Occupational Titles ("DOT") No. 209.562-010); home attendant (DOT No. 254.377-014); and social worker (DOT No. 195.107-080), as actually and generally performed. (AR at 22.) The ALJ also relied on the VE's testimony to determine that there were alternative occupations such as usher (DOT No. 344.6787-014), ticket taker (DOT No. 344.677-101), and cashier (DOT No. 211.462-010), that exist in significant numbers in the national economy. (AR at 47.)

**B.     The ALJ's Consideration of the Relevant Medical Evidence of Record.**

Plaintiff contends that the ALJ failed to properly consider the relevant medical evidence of record. (JS at 4.)

Specifically, Plaintiff contends that the ALJ failed to properly consider multiple statements from Plaintiff's treating physicians in which they indicated Plaintiff is incapable of sustaining work activity for various periods of time. (Id.) On September 12, 2008, a treating physician with University Medical Health Center in Fresno, California, opined that Plaintiff was unable to work in any capacity but that her disability was of a temporary nature, and it was expected she would be capable of performing some type of work activity by March 12, 2009. (Id. (citing AR at 527).) On September 12, 2008, the same treating physician also documented that Plaintiff was continuing to suffer balance problems; had fallen several times; and was complaining of insomnia, excessive fatigue, and memory problems. (Id. (citing AR at 528).)

On April 9, 2009, a physician from F.I.R.M. Assoc. Inc., in Fresno, reported Plaintiff to have "out of control diabetes - unsafe to work." (Id. (citing AR at 532).) That physician noted that Plaintiff's condition was only temporary and that it was expected she would be able to return to some form of work by November 1, 2009. (Id. at 4-5 (citing AR at 533).)

On November 18, 2009, the same treating physician from F.I.R.M. Assoc. Inc. again stated that he believed Plaintiff could not sustain full- or part-time work, noting that she "nearly fell times 2." (Id. at 5 (citing AR at 530).) The physician also concluded that in his opinion, Plaintiff's diabetes was now a permanent condition. (Id. (citing AR at 531).)

The ALJ rejected these statements:

> The claimant also submitted a General Relief eligibility form dated September 2, 2008 indicating that the claimant is unable to work "temporarily." Another one of the forms dated November 18, 2009, indicates that "patient nearly fell x2" that her onset date of diabetes mellitus was 1985, and she is permanently disabled due to diabetes mellitus. This form cannot be given any credence as it is unsupported by the medical evidence in the record and "nearly" falling is not sufficient evidence to indicate a "permanent" disability. A subsequent form dated April 9, 2009, again indicates only "temporary" duration for her inability to work due to uncontrolled diabetes. There is a comment that the claimant needs "treatment for diabetes should be able to work when in better control." It is apparent from the records of Clovis Community Hospital and University Medical Center that the claimant has in fact been receiving treatment for her diabetes, but has been noncompliant (see discussion above). It is also significant that the claimant has had diabetes since 1985. The record reveals that the claimant's allegedly disabling impairments were present at

4

       approximately the same level of severity prior to the alleged onset date.
The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work. In addition, the determination of "disability" is reserved to the Commissioner.

(AR at 22 (citations omitted).)

       Plaintiff contends that the ALJ failed to state clear and convincing reasons for rejecting the treating physicians' opinions. She argues that the ALJ's decision was improperly based upon Plaintiff's inability to afford certain types of medical care for her diabetes, and also contends that the record amply demonstrates that her loss of balance and falling down were long-standing problems related to her diabetes. (JS at 5-6.)

       **1.**    **Applicable Law.**

       It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as it is here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Thomas, 278 F.3d at 957 (citation and quotation omitted).

### 2. The ALJ's Consideration of the Opinions of Plaintiff's Treating Physicians.

A review of Plaintiff's medical records supports the ALJ's finding that the opinions of the treating physicians regarding Plaintiff's temporary and permanent disability were unsupported by the evidence of record.

Preliminarily, even a finding of temporary disability would not be proof of disability because disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The temporary disability forms signed by the treating physicians each indicated an anticipated six month period to recovery.

Although Plaintiff was hospitalized in July 2007 after she "woke up [with] confusion that persisted throughout the day," at discharge, the records showed that her altered mental state due to diabetic ketoacidosis had been resolved.  (AR at 295.)  There is no opinion in the hospital record that Plaintiff was disabled; in fact, her "Rehab Potential" was indicated to be excellent; (id. at 282); her altered mental status was "resolved" (id. at 295); and she insisted on going home despite being advised to stay in the hospital one more day in order to monitor her IV anitbiotics and allow time for the sedative medication to wear off prior to discharge (id. at 296).

In March 2009, Plaintiff again presented to the emergency room,

complaining only of a cough and headache for the past eight days, as well as some mild general weakness and tiredness. (Id. at 394-525, 409.) She disclosed that she had not taken any insulin or blood pressure medicine for more than two weeks prior to being admitted, as she had run out of her prescriptions. (Id. at 409.) Again she was diagnosed with diabetic ketoacidosis. (Id.) At discharge, she was "hemodynamically stable, asymptomatic," and in stable condition. (Id. at 397.)

Plaintiff's treatment records, show little more than routine office visits, some for unrelated conditions, e.g., Pap smear, spot on neck; medication checks and refills (see id. at 355, 386-91, 394-525, 534-39); and no specific concerns relating to her diabetes (id. at 315-353, 386-91, 534-39). For instance, in February 2008 , although she reported trouble sleeping and low energy, her doctor noted she was not keeping up with her medication. (Id. at 352.) On May 29, 2007, there is a note that she was complaining of numbness in her hands, feet, and legs. (Id. at 345.) There do not seem to be any additional treatment notes regarding this complaint.

Plaintiff contends that the ALJ ignored the allegedly "voluminous medical evidence of record which clearly documents Plaintiff's long standing impairments, symptoms, and limitations from her diabetes which includes loss of balance and falling down repeatedly," and the "multiple consistent statements by the treating physician." (JS at 6.) However, other than the treating physician's one statement in the general relief form reporting Plaintiff's subjective complaint of nearly falling down two times, and the consultative examiner's report wherein he indicated Plaintiff reported her subjective complaint of falling down about three times a week (id. (citing AR at 366)), Plaintiff fails to provide this Court with any specific reference in the record to support her statements. Moreover, this Court has been unable to locate such references in the medical evidence of record.

Plaintiff complains that the ALJ improperly considered her failure to take

her medications, which may have been caused by her inability to pay,[3] as evidence to discredit the treating physician's opinions. (JS at 6-7.) However, although the ALJ noted that Plaintiff had been noncompliant with her medication, running out on two separate occasions, he also acknowledged that her difficulty in complying may be due at least in part to her inability to afford treatment. (AR at 20.) An ALJ may consider an unexplained or inadequately explained failure to seek treatment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

As noted by the ALJ, one of the treating physician's notes indicated that Plaintiff "should be able to work when in better control" of her diabetes. (AR at 22 (citing id. at 533).) The ALJ also noted that the records from Plaintiff's two hospital stays indicated that she had been receiving treatment for her diabetes, but had been noncompliant with her medication, that after hospitalization she was discharged as stable and asymptomatic, and that she refused nutritional diabetic diet education. (Id. at 20-22.) As such, it appears from the record that Plaintiff's diabetes could be controlled effectively with medication. Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling for purposes of eligibility for benefits); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (where claimant's multiple impairments were controllable by medication or other forms of treatment, ALJ did not err by finding impairments did not significantly limit claimant's exertional capabilities).

As noted by the ALJ, the consultative examiners and state agency

---

[3] Defendant notes that although Plaintiff does not have insurance, she testified she went to the Medically Indigent Services Program ("MISP") for treatment. (JA at 13 (citing AR at 398).) There is a treatment note in the file at the time that Plaintiff ran out of medication, that she may not have wanted to participate in the MISP program. (AR at 398.) Thus, there is an inference that she had access to low or no cost health care. Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (ALJ entitled to draw inferences logically flowing from the evidence).

physicians' evaluations of Plaintiff also revealed no significant limitations, neurological deficits, or vision problems. (AR at 21, 366-69.) Although Plaintiff apparently had some vision problems due to scarring from prior cataract surgery, she had no limitations as a result. (Id. at 367, 369, 387.) Further, although Plaintiff complained that the primary issue that keeps her from working at this time is memory problems, a consultative psychological examination that included memory tests, found no significant evidence of any mental limitations or impairment. (Id. at 20-21, 357-58.) The ALJ gave "great weight" to this opinion. (Id. at 21.)

The ALJ also gave great weight to the opinion of the consultative internal medicine examiner. (Id. at 21.) That evaluation showed that Plaintiff's blood sugar was high, but she had not been taking her medications; she looked well and required no assistive device; her range of motion in all extremities was normal; sensation was normal; but she did fall backwards during the Romberg testing. (Id. at 21 (citing id. at 366-69).) Because of the possibility of poor balance based on the positive Romberg test, the consultative examiner indicated Plaintiff should not work at heights. (Id. at 369.) The ALJ took this into account in formulating his RFC. (Id. at 19.) The ALJ also gave some weight to the opinions of the nonexamining physicians who found no objective evidence of psychiatric or medically determinable impairment. (Id. at 22 (citing id. at 370-85).)

Finally, the ALJ reviewed the Listings associated with Plaintiff's impairments and found that her medically determinable impairments did not meet or equal Listings 9.08 (diabetes mellitus),[4] or 4.02 (chronic heart failure), and 4.04

---

[4] Effective June 7, 2011, diabetes mellitus falls under Listing 9.00 (Endocrine Disorders). Section 9.00 indicates that endocrine disorders now are evaluated under the listings for other body systems. For example, diabetic ketoacidosis, which results from severe insulin deficiency and can affect various
(continued...)

1 (ischemic heart disease). (Id. at 18-19.) The ALJ noted that to meet Listing 9.08
2 would require diabetes with neuropathy associated with "significant and persistent
3 disorganization of motor function in two extremities resulting in sustained
4 disturbance or gross and dexterous movements, or gait and station; or acidosis
5 occurring at least on the average of once every two months; or related
6 amputations; or retinitis proliferans," and that Plaintiff's medical records "do not
7 substantiate the presence of any of the required conditions." (Id. at 19.) Nor did
8 her hypertension meet the requirements of Listings 4.02 or 4.04, as she had not
9 experienced chronic heart failure or myocardial ischemia. (Id.)

10     Based on the foregoing, the Court finds that the reasons given by the ALJ
11 for discounting the treating physicians' opinions were specific and legitimate and
12 supported by substantial evidence of record. Thus, there was no error.

13 **C.**     **The ALJ Properly Considered Plaintiff's Credibility.**

14     Plaintiff alleges she is unable to work due to memory loss, chronic fatigue,
15 diabetes, and vision problems. (Id. at 19 (citation omitted).) She also reported
16 low energy levels, balance issues, and that she cannot kneel or climb. (Id. (citation
17 omitted).) She testified at the hearing that her diabetes is out of control, causing
18 nausea, fatigue, vision problems, memory loss, balance issues, fine motor
19 coordination issues, and that she falls once a week. (Id. (citing hearing
20 testimony).)

21     Plaintiff contends that the ALJ failed to properly consider Plaintiff's
22 subjective complaints and to provide clear and convincing reasons for discounting
23 Plaintiff's credibility; failed to identify any malingering or symptom magnification

---

[4](...continued)
body systems, may be evaluated under Listings 4.00, 5.00, 11.00, or 12.00.
Similarly, chronic hyperglycemia, which is longstanding abnormally high levels of
blood glucose and may disrupt nerve and blood vessel functions, may be evaluated
under Listings 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00.

on the part of Plaintiff; and did not specify which statements he found not sufficiently credible. (JS at 14-16.) Plaintiff also notes that although she has consistently reported that she is fatigued "all of the time," the ALJ did not "specifically accept or reject Plaintiff's complaints of chronic fatigue." (Id. at 16.) She claims the ALJ's failure to "properly consider her consistently reported symptoms and limitations with the voluminous medical evidence of record," constitutes reversible error. (Id. at 18.)

### 1.  **Legal Standard.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Once a claimant has presented medical evidence of an underlying impairment which could reasonably be expected to cause the symptoms alleged, the ALJ may only discredit the claimant's testimony regarding subjective pain by providing specific, clear, and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas, 278 F.3d at 958-59 (9th Cir. 2002)

(citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms.  Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

  **2.  Analysis.**

  The ALJ noted that Plaintiff's allegations were unsupported by the medical evidence from her treating physicians.  (AR at 19-20.)  The ALJ reviewed Plaintiff's 2007 hospitalization records and commented on the fact that on discharge, her altered mental status due to her diabetes being out of control had been resolved, and there was no opinion in those records that Plaintiff was disabled.  (Id. at 20 (citation omitted).)  He ALJ reviewed Plaintiff's treatment notes from University Medical Center and Clovis Community Medical Center where she was hospitalized in 2009, and found that prior to hospitalization, she

had not taken her insulin for more than two weeks, but she was stable and symptomatic on discharge.  (Id. (citation omitted).)  The ALJ also commented that Plaintiff had refused an attempted nutrition consult to provide her education about a diabetic diet.  (Id. (citing id. at 442).)  In 2010, another note indicated her diabetes was out of control due to her running out of medication.  (Id. (citing id. at 536).)

The ALJ also reviewed Plaintiff's treatment for vision problems and noted that an examination in 2008 showed that her vision was completely within the normal range.  (Id. (citation omitted).)  A May 2007 treatment note showed that Plaintiff complained of numbness in her hands, feet and legs, and indicated that the doctor spoke to her about her glucose levels and the medication she was taking, Concerta.  (Id. at 345.)  There was mention of depression, trouble sleeping, low energy, anhedonia, and depressed mood in another note from February 2008, but the doctor who made that note also indicated that Plaintiff was "'not keeping up meds.'"  (Id. at 352.)

The ALJ also reviewed the reports from the Richard Engeln, Ph.D., who performed a consulting psychological examination, noting that Plaintiff was described as alert and oriented, accepted tasks with good effort, showed no evidence of any mental or emotional illness, appeared mentally competent to manage funds, capable of job adjustment, and able to receive multidimensional instructions.  (Id. at 20-21 (citation omitted).)  The ALJ also  reviewed the 2008 internal medicine evaluation of James A. Nowlan, M.D., who found that Plaintiff has had diabetes for twenty years; her blood sugar on that date was 250 and she was not taking her medications; she reported that she falls about three times a week but required no assistive device; her range of motion in all extremities was normal; she had poor balance but could stand and walk for six hours in an eight-hour day; could sit for an unlimited period; and should avoid working at heights because of the results of her Romberg test.  (Id. at 21 (citations omitted).)  The

ALJ stated that the review of the medical evidence by Dr. A. Khong, found that there was no evidence of neuropathy in the record; motor strength, sensation, and reflexes were normal; the positive Romberg test appeared to "be an isolated finding of questionable clinical significance"; and there was no persuasive evidence of a severe impairment. (Id. (citation omitted).) The reviewing psychiatrist, Dr. S. Bortner, found that Plaintiff was dejected about her medical conditions and their effects upon her function; she perceives her "minor immediate memory difficulties as more severe/limiting than they actually are"; and that objective findings indicate that any psychiatric medically determinable impairment was non-severe. (Id. at 21-22 (citation omitted).)

Finally, the ALJ noted that his RFC was supported by Plaintiff's own statements regarding her activities of daily living, both in her application for benefits and in her testimony. (Id. at 22 (citation omitted).) The ALJ also found the RFC supported by the medical evidence, the opinions of the examining and consultative examiners, and the fact that Plaintiff had not been compliant with treatment. (Id.) The ALJ found that Plaintiff's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date, and the fact they did not prevent her from working at that time was suggestive that they would not currently prevent work. (Id.)

Accordingly the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible. See, e.g., Bunnell, 947 F.2d at 346-47; Morgan, 169 F.3d at 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell, 161 F.3d at 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been

1 prescribed).

2     Based on the foregoing, the Court finds the ALJ's credibility finding was supported by substantial evidence and was sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective testimony. Thus, there was no error.

## IV.
## ORDER

    Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

Dated: November 8, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge